In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 05-2017

JUDITH MENDEZ,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:03-CV-309—**Andrew P. Rodovich**, *Magistrate Judge.*

———————

ARGUED JANUARY 25, 2006—DECIDED FEBRUARY 28, 2006

———————

Before POSNER, MANION, and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.*  Judith Mendez, 22 years old at the time of her hearing before the administrative law judge, is borderline retarded and also suffers from depression; she has never been employed. She appeals from the judgment of the district court affirming the denial by the Social Security Administration of her application for disability benefits. Her composite score on IQ tests has ranged from 68 to 71; there is no suggestion that she was "playing dumb" in any of these tests. She has had several episodes of depression and anxiety (mental illnesses that are frequently found conjoined), which have been

treated by the antipsychotic drug Zoloft, occasional psychiatric therapy, and one hospitalization, in which after being diagnosed as suffering from major depression she was placed on suicide watch. She has pain and weakness in her legs, causing her to have "a wide-based, slow gait, with a somewhat shaky and clumsy walk." Nevertheless the administrative law judge did not think her disabled. Her depression and anxiety "seem," he said, "to be episodic and of relatively short duration, since she has never followed through consistently with any counseling services offered her, and has apparently taken Zoloft only intermittently as her symptoms recur . . . . [S]he cares for her children [she has four children, the first born when she was 12 years old, and no husband] and her personal needs; assists with the cooking, cleaning, laundry, and shopping; and has no difficulty getting along with family members, neighbors and friends . . . . [T]he deficits noted in concentration, persistence or pace during the psychological evaluations are attributable to her intellectual limitations." Noting contradictions in her testimony, such as that she slept all day yet cared for her children, the administrative law judge pronounced her not "particularly credible."

A section of the "grid" that the Social Security Administration uses to streamline the process of determining disability (which must be total to entitle the claimant to benefits) provides that the claimant is disabled if she has an IQ of between 60 and 70 "and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05(C). Although an IQ in that range seems very low, there are several types of job that a person with such a low IQ can perform, such as cleaning and janitorial jobs. *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991); U.S. Dept. of Labor, Bureau of Labor Statis-

tics, *Occupational Outlook Handbook: 2004-05 Edition* 6, 373 (Bulletin 2570, March 2004). IQ scores are not absolute tests of acuity; a person with an IQ of 70 cannot be said to be half as smart as a person with an IQ of 140. Intelligence is, in effect, graded on a curve. Roughly 95 percent of the population has an IQ between 70 and 130, which places Mendez toward the top of the bottom 2.5 percent or so, Joseph D. Matarazzo, *Wechler's Measurement and Appraisal of Adult Intelligence* 124-25, 128 (5th ed. 1972), but does not indicate how far her intelligence falls short of that of the average person. *Id.* at 126. Generally, an IQ of 70 is considered just at the borderline of mental retardation. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR)* 41-43 (4th ed. 2000); *Stedman's Medical Dictionary* 1557 (27th ed. 2000); *Medline Plus Medical Encyclopedia*, http://www.nlm.nih.gov/ medlineplus/ency/ article/001912.htm, visited Jan. 30, 2006. That is why the grid requires an additional impairment in order to establish disability. The administrative law judge did not apply the regulation that we have quoted, however, because he erroneously stated that "the claimant's last IQ scores are all at 70 or above."

The government argues that the error is irrelevant because Mendez failed to make a threshold showing that she is mentally retarded. The regulation on which she relies is in section 12 of the regulations that list the various impairments that can support a finding of disability. Section 12.00(A) states that "Listing 12.05 [mental impairments] contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the

listing." (Mendez relies on C, which we quoted earlier.) The introductory paragraph of section 12.05, to which section 12.00(A) is referring, states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." The government argues that the effect of these linked passages is that the administrative law judge must consider not only IQ and (other) impairments; he must first determine that the claimant is mentally retarded as defined in section 12.05's introductory paragraph. The Eighth Circuit recently rejected the government's argument, *Maresh v. Barnhart*, 431 F.3d 1073, 1075 (8th Cir. 2005), but without discussion.

In defending the administrative law judge's decision on a ground that he himself did not mention, the government violates the *Chenery* principle. But it would not help the government if we overlooked the violation, because while the regulations do require the administrative law judge to determine that the claimant's mental "deficits" were manifested before the age of 22, there is no question that Mendez's were manifested before then. It is something of a puzzle that the regulations require more than valid IQ test results to demonstrate mental retardation, but the explanation may lie in the fact we noted earlier that an IQ of 70, which figures prominently in the criteria for disability based on mental retardation, is at the borderline between retardation and normal, if low, mental ability. It is noteworthy that in the wake of the Supreme Court's decision holding that it is unconstitutional to execute retarded murderers, *Atkins v. Virginia*, 536 U.S. 304 (2002), states have adopted criteria for retardation that, like

the regulation in this case, require besides a low IQ limitations in the skills required in everyday life. E.g., *Commonwealth v. Miller*, No. 399 CAP, 2005 Pa. LEXIS 2997, at *14-17 (Pa. Dec. 27, 2005); *Ex parte Perkins*, 851 So. 2d 453, 456 (Ala. 2003).

So back to the administrative law judge's error regarding the IQ test results: the error would not be fatal were it clear that Mendez has no "physical or other mental impairment imposing an additional and significant work-related limitation of function," and indeed the administrative law judge stated that she did not. We quoted the main reasons he gave for that conclusion. They are not adequate. The fact that a psychiatric patient does not follow through on counseling or take antipsychotic drugs regularly is a common consequence of being psychotic and is especially to be expected of a person with a very low IQ. The administrative law judge himself attributed to her low IQ "deficits . . . in concentration [and] persistence." Such "deficits" are quite likely to cause a psychiatric patient to respond erratically to treatment directions.

We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005); *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996). (Some weight is appropriate. *Warner v. Commissioner of Social Security*, 375 F.3d 387, 392 (6th Cir. 2004).) The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work. We do not know

what Mendez's "assist[ance]" in performing house-hold chores amounts to. We do know that she does not (as the administrative law judge's opinion may imply) take care of her four children by herself, in part because she's worried about choking the youngest child when she feeds him because she doesn't know when to stop the feeding, an uncertainty that does not augur well for her ability to perform even the simplest tasks outside the home. You don't want someone who doesn't know when to stop watering your plants; she is likely to drown them.

The administrative law judge's finding that Mendez was not "particularly credible," whatever exactly that means, is undermined by his literalism. When a person says that she sleeps all day, she doesn't mean it literally; she means that she is abnormally sleepy and listless and dozes off frequently. That is what one expects of someone with severe depression and is consistent with Mendez's caring for her children, since she takes care of them with the help of other people—her mother and her boyfriend (the children's putative father).

The administrative law judge also failed to consider the totality of Mendez's impairments, as he was required to do. *Gentle v. Barnhart*, *supra*, 430 F.3d at 868. Besides her low IQ and her depression, she walks unsteadily as we know, doubtless in part because of obesity; she is only 5 feet 1 inch tall but weighs 184 pounds. The administrative law judge should have considered whether her difficulty in getting around would interact with her cognitive limitations and her psychiatric condition to make her incapable of complying with even simple workplace directives.

The administrative law judge failed to articulate a reasoned basis for the denial of benefits. The judgment of the district court is therefore vacated and the case remanded to

the Social Security Administration for further proceedings consistent with this opinion.

A true Copy:

      Teste:

                                   _____

                              *Clerk of the United States Court of*
                                   *Appeals for the Seventh Circuit*