UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued November 15, 2006
Decided November 21, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-1518

| | |
|---|---|
| WILLIE J. GRIFFIN, JR.,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 05 C 132 |
| JO ANNE B. BARNHART,<br>    *Defendant-Appellee.* | Larry J. McKinney,<br>*Chief Judge* |

**O R D E R**

Willie Griffin applied for Supplemental Security Income and Disability Insurance Benefits in May 2002, claiming disability due to a gunshot wound and mental retardation.  His claim was denied initially, upon reconsideration, and after a hearing before an ALJ.  The ALJ found that Griffin was not disabled because he was capable of performing substantial gainful activity.  We affirm.

At the time of his administrative hearing in 2004, Griffin was 40 years old.  In the years preceding the onset of his alleged disability, Griffin worked as a construction worker, restaurant stocker, warehouse worker, and maintenance worker.  In April 2002, he was admitted to the hospital with a gunshot wound to his abdomen.  He remained in the hospital for three weeks, after which he was released with a

colostomy. The colostomy was removed in July 2002, and the attending physician reported no abnormalities in Griffin's cardiovascular or respiratory systems. Griffin was released from the hospital a week after the colostomy was removed, again with no evidence of complications. The surgeon who treated Griffin after his gunshot wound released him for work with no restrictions in November 2002.

In May 2002, the Disability Determination Bureau referred Griffin to a psychologist to investigate his claims of depression, anxiety, and "reading problems." In his report the psychologist, Dr. O'Brien, noted that even when specifically asked, Griffin did not mention having a mental health disorder. Griffin alleged that he had depressive symptoms, but reported that the severity of his symptoms had subsided over time. Based on Griffin's responses to the mental health examination, Dr. O'Brien stated that he met the criteria for an adjustment disorder with depressed mood. The doctor also noted that mild mental retardation should be "rule[d] out," presumably through further testing. After receiving this diagnosis, Griffin amended his application to allege complete disability due to the gunshot wound—which he claimed caused constant abdominal and back pain, difficulty with bowel movements and urination, and entire body weakness—plus hypertension, depression, anxiety, difficulties with memory and reading, and possible mild mental retardation.

An administrative hearing was held in September 2004 to determine Griffin's disability status. Three experts were called to testify at the hearing: Dr. David Jarmon and Dr. Loyd Stump, both non-examining physicians, and Michael Blankenship, a vocational expert. Dr. Jarmon testified that the only evidence of psychological impairment in the record was Dr. O'Brien's diagnosis of an adjustment disorder with depressed mood, and possible mild mental retardation. He opined that Griffin's adjustment disorder was a psychological response to his injury, and that it would exist as long as the physical conditions causing the disorder exist. Dr. Jarmon also testified that the record contained no evidence that Griffin could not perform simple, unskilled labor. Based on his review of the record, Dr. Stump testified that Griffin did not appear to have complications from any of his surgical procedures. Blankenship testified that Griffin's past jobs were either unskilled or semi-skilled and that the exertion level of his jobs was typically either medium or heavy. When asked about the availability of jobs for an illiterate, 40-year-old man who could lift up to 20 pounds, Blankenship asserted that there were roughly 255 sedentary, unskilled jobs in Indiana that he could perform.

On the basis of the experts' testimony and his finding that Griffin's testimony was not credible, the ALJ concluded that Griffin was not disabled. Following the five-step analysis detailed in 20 C.F.R. § 404.1520, the ALJ concluded that Griffin had not engaged in substantial gainful activity since the onset of his disability (step one), and assumed arguendo that Griffin had severe medically determinable impairments (step two). The ALJ next concluded that Griffin's impairments did not satisfy the § 12.05

listing (step three). According to the ALJ, Griffin's mental retardation was not developmental, that is, did not exist before age 22; the ALJ further noted that Griffin's work history indicated that he did not show deficits in adaptive behavior that were required for a valid mental retardation diagnosis. The ALJ also determined that Griffin could perform the work that he had done in the past (step four), noting that "there is no pathology in the claimant's impairments precluding work at this level." The Appeals Council declined review, and the ALJ's decision became the final decision of the Commissioner of Social Security. The district court affirmed the decision.

On appeal Griffin first argues that the ALJ improperly discounted evidence supporting his mental retardation claim. Griffin points to his placement in special education classes during childhood, his poor academic record, his illiteracy, and Dr. O'Brien's post-examination note to "rule out mild mental retardation" to show that he is mentally retarded. This court will uphold the ALJ's findings if they are supported by substantial evidence. *See Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).

Mental retardation is "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . before age 22." *See* 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.05. Section 12.05(C) holds that a claimant is considered mentally retarded when he has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id.*; *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

Although Griffin argued that he was mentally retarded, he did not supply the ALJ with sufficient evidence supporting his claim. For example, he did not provide IQ, or any other test results, which are required by statute to establish mental retardation. Additionally, aside from his own testimony, Griffin presented no evidence corroborating his alleged illiteracy or poor academic record. *Cf. Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (noting that record evidence confirming claimant's special-education instruction during childhood, in addition to low IQ results taken at age 37, supported his claim of developmental mental retardation).

Griffin relatedly argues that the ALJ abdicated his duty to fairly develop the record by not requesting a full psychological examination. But Griffin bears the burden of supplying evidence to prove his claim of disability. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). The ALJ's duty to develop the record is not so sweeping that it can relieve an applicant entirely of his own responsibility for supporting his claim; instead, the ALJ must exercise some discretion in deciding when and how he should order additional evidence. Dr. O'Brien's note is the only evidence suggesting mental retardation, but the notation to "rule out mild mental retardation" was by no means a diagnosis. Given the dearth of evidence supporting Griffin's claim, the ALJ did not abuse his discretion

in refusing to order additional tests. Substantial evidence in the record supported his conclusion that Griffin did not meet the listing for mental retardation.

Griffin also suggests that this court's opinion in *Mendez v. Barnhart*, 439 F.3d 360 (2006), requires reversal of the ALJ's decision, but his reliance on *Mendez* is misplaced. In that case, this court stated that there was "no question" that the claimant's deficits were developmental, *id.* at 362, whereas in this case, as discussed above, Griffin provides virtually no concrete evidence of mental retardation.

Griffin next argues that the ALJ's credibility determination violated Social Security Ruling 96-7p. Specifically, he argues that the ALJ did not provide specific reasons for his skepticism about Griffin's claim that he can no longer work. This court defers to a credibility finding, and will reverse only if the finding is "patently wrong." *See Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citation omitted); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). Here after reviewing Griffin's medical history—which included a work release from the surgeon who treated his gunshot wound and medical experts' testimony that his injury had largely healed—and questioning Griffin, the ALJ found his testimony not credible. The ALJ noted that his demeanor varied greatly depending on who asked the questions and mentioned that Griffin made "an unpersuasive attempt to cry." Because the ALJ based his determination on a combination of medical evidence and his perception of the witness, the credibility finding should not be disturbed. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005).

Griffin's final arguments are that the ALJ erred in formulating his residual functional capacity (RFC)—by not factoring in his alleged mental retardation—and that the ALJ improperly found that Griffin was able to perform jobs he previously held. As discussed above, however, substantial evidence supports the ALJ's conclusion that Griffin was not mentally retarded. Substantial evidence also supports the ALJ's finding that Griffin could perform medium to high level work. Both testifying doctors opined that Griffin no longer had work-related limitations. The ALJ also noted Griffin's work release in 2002, and the fact that state agency examiners expected no lasting physical ramifications from the gunshot wound. The ALJ mentioned Griffin's subjective complaints, but found them incredible, largely because they were not substantiated by medical evidence. Despite Griffin's assertion to the contrary, nothing in the record suggests that this finding was erroneous.

AFFIRMED.