In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3609

CHERYL BEARDSLEY,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:12-CV-75 — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED MAY 28, 2014 — DECIDED JULY 10, 2014

Before RIPPLE, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal from the denial of
Social Security disability benefits is unusual because the
administrative law judge discounted the opinion of the
agency's own examining physician to conclude that the
claimant before him was not disabled. Claimant Cheryl
Beardsley argues that the ALJ erred by giving too little
weight to the opinion of the examining doctor and too much

weight to an erroneous view of her daily activities, particularly the care she provided for her elderly mother. Ms. Beardsley also argues that the ALJ improperly held against her the decision not to seek surgery without trying to ascertain the reasons for her reluctance. We agree. These errors undermined the "logical bridge" between evidence and conclusion that is needed to affirm a denial of disability benefits. See *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The judgment of the district court affirming the denial of benefits is reversed and Ms. Beardsley's case is remanded to the Commissioner of Social Security for proceedings consistent with this opinion.

Ms. Beardsley was 49 years old when she fell and injured her knee. At that time, she had a history of working as a machine operator, assembler, inspector, and cashier. After the injury, Ms. Beardsley applied for disability insurance benefits and supplemental security income. Her doctors determined that she had meniscal tears and a ruptured ligament. The effects of these injuries were compounded by her obesity and her worsening osteoarthritis in that same knee. Ms. Beardsley declined to have surgery for the ligament damage but received a series of injections for the arthritis.

After Ms. Beardsley applied for disability benefits, Dr. Larry Banyash examined her on behalf of the Social Security Administration. See 20 C.F.R. §§ 404.1519, 416.919 (establishing such consultative examinations for applicants seeking, respectively, disability insurance benefits and supplemental security income). His opinion was that the pain and weakness in her knee restricted her ability to walk, stand, climb stairs, crouch, and kneel. He believed she was capable of sedentary work. Given Ms. Beardsley's age and

skills, though, a finding that she was capable of only sedentary work would have qualified her as disabled at the time of the ALJ's decision under the "grid" the agency uses for making that determination. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12.

Ms. Beardsley's paper record then went for review by another agency physician, Dr. M. Brill. This doctor was more sanguine about Ms. Beardsley's capabilities. He judged her able to stand or walk for about six hours of an eight-hour workday, and he thought she could occasionally climb stairs, crouch, kneel, or bend down. He also thought she was not at all limited in her ability to "Push and/or pull (including operation of hand and/or foot controls)."

After an evidentiary hearing, the ALJ denied Ms. Beardsley's application for benefits. Applying the familiar five-step sequential inquiry for assessing disability, see 20 C.F.R. §§ 404.1520(a), 416.920(a), the ALJ determined at step one that Ms. Beardsley had not engaged in substantial gainful activity and at step two that she had a number of severe impairments: chronic knee pain, depression, personality disorder, anxiety, and obesity. These did not, however, automatically qualify her as disabled at step three under the "Listings" in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded at step four that these impairments prevented Ms. Beardsley from performing her past work as a cashier or on factory assembly lines, so her claim was decided at step five, where the issue was whether she retained the ability to do other jobs available in the national economy. The ALJ found that she did, concluding that Ms. Beardsley could still perform a range of light work so long as she did not have to stand or walk for more than 30 minutes at a time or

for more than six hours total in a workday. The ALJ therefore denied Ms. Beardsley's application for benefits. The district court affirmed, and this appeal followed.

If the Commissioner's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or if the ALJ based the decision on serious factual mistakes or omissions, *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). The ALJ also has a basic obligation to develop a full and fair record, *Nelson*, 131 F.3d at 1235, and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings, *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d

881, 887 (7th Cir. 2001). If the evidence does not support the conclusion, we cannot uphold the decision. *Blakes*, 331 F.3d at 569.

The logical bridge was not sound here. The ALJ relied on three principal grounds to find that Ms. Beardsley could do light work: (1) her description of her own capabilities and daily activities, (2) the opinion of Dr. Brill, and (3) Ms. Beardsley's conservative course of treatment, including her decision not to seek surgery. As we explain below, none of these factors, considered individually or collectively, provides adequate support for the ALJ's conclusion that Ms. Beardsley could perform work more demanding than sedentary work.

I.   *Ms. Beardsley's Self-Reported Capabilities*

Ms. Beardsley testified at her hearing that she experienced moderate to extreme pain throughout her leg and into her back. She had difficulty walking or standing for more than about ten minutes at a time, and although she could drive without using her injured left knee, she had trouble getting in and out of the car and did not like going out. She estimated that she shopped for necessities about once a week, leaning on the grocery cart for support, and that her pain would usually be worse the next day. Much of Ms. Beardsley's weekdays were spent keeping her mother company, which involved watching television, playing cards, doing light housework, preparing simple meals, and helping her mother into bed in the evening.

The ALJ acknowledged that these daily activities were "fairly limited," but he was not persuaded that they weighed in favor of a disability finding because "allegedly limited

daily activities cannot be objectively verified with any rea-
sonable degree of certainty." Whatever uncertainty may exist
around such self-reports is not by itself reason to discount
them—otherwise, why ask in the first place?—and the rele-
vant regulations specifically allow ALJs to consider claim-
ants' "daily activities." 20 C.F.R. §§ 404.1529(a), 416.929(a).
By the ALJ's reasoning, the agency could ignore applicants'
claims of severe pain simply because such subjective states
are impossible to verify with complete certainty, yet the law
is to the contrary. See *Carradine v. Barnhart*, 360 F.3d 751 (7th
Cir. 2004) (reversing and remanding where ALJ improperly
discounted applicant's claims of severe pain); 20 C.F.R.
§§ 404.1529, 416.929 (regulations governing evaluation of
symptoms, including complaints of pain). Nor was the rec-
ord lacking in evidence to corroborate Ms. Beardsley's re-
ported activities. Her mother gave a similar account of her
daughter's daily routine and limitations, and both of their
descriptions were consistent with the medical evidence of a
severe knee injury.

The ALJ also highlighted what he saw as inconsistencies
in Ms. Beardsley's self-reports. To the extent we see any in-
consistencies here, they do not rise above trivial matters that
the ALJ did not inquire into during Ms. Beardsley's hearing.
Ms. Beardsley wrote in her application for benefits that she
went to her mother's every weekday, but also said in the
same document that she "went outside" about three times a
week. She acknowledged paying her own bills but also said
she had difficulty handling money because of her depression
and other mental difficulties. Sometimes when she went out,
she needed someone to accompany her, but sometimes not.
"An ALJ's credibility assessment will stand as long as there is
some support in the record," *Berger v. Astrue*, 516 F.3d 539,

546 (7th Cir. 2008) (internal formatting omitted), but without some attempt by the ALJ to explore the supposed contradictions here, they do not provide a sound basis for concluding that Ms. Beardsley's report was inaccurate. See *Zurawski*, 245 F.3d at 887–88 (ALJ's adverse credibility determination could not be upheld because it was based solely on unsupported "inconsistencies" with medical record and daily activities); Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) (explaining process by which ALJs must evaluate credibility of applicants).

The ALJ's main reason for discounting the evidence of Ms. Beardsley's physical limitations was the care she provided for her mother. The ALJ commented that such care "can be quite demanding both physically and emotionally." As we have said, it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member. See *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("Gentle *must* take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities" such as preparing simple meals, weekly grocery shopping, taking care of family member, and playing cards "do not establish that a person is capable of engaging in substantial physical activity"); SSR 96-p7 (claimants may sometimes have struc-

tured daily activities to minimize symptoms and avoid physical and mental stressors).

The ALJ's reliance was especially troublesome in this case because most of what Ms. Beardsley did at her mother's house was sedentary: playing cards, watching television, and preparing sandwiches or simple meals on the stove. These tasks "differ dramatically" from the type of jobs the ALJ believed Ms. Beardsley was capable of performing, see *Mendez*, 439 F.3d at 362, and lend no support to the conclusion that she would be able to spend six hours a day, every day, on her feet working.

The ALJ cited additional activities, such as taking care of pets, doing laundry, cleaning, and shopping, that might support a more robust residual functional capacity. But undisputed evidence in the record undermines the ALJ's reliance on each of these activities. Ms. Beardsley did not say that she took care of the animals at her mother's house—only that she pet them to help with her depression and that her daughter fed and cleaned up after them. Ms. Beardsley did say she could clean and do laundry, but also that it took her several days to complete each chore. And while she went shopping once a week, those trips lasted only half an hour and often left her knee in worse pain the next day, despite leaning on the shopping cart. The fact that she helped lift her mother's legs into bed each evening, which the ALJ singled out in his decision, is likewise miles removed from the demands and pressures of a regular workplace where Ms. Beardsley would be required, according to the ALJ, to stand or walk around for most of the workday. Like the other evidence of Ms. Beardsley's daily activities, it did not support the ALJ's conclusion.

II. *Opinions of Drs. Brill and Banyash*

The ALJ placed "great weight" on the opinion of Dr. Brill, who reviewed Ms. Beardsley's records and concluded that she was capable of performing a range of light work. The judge gave only "some weight" to Dr. Banyash's report although he examined Ms. Beardsley in person on behalf of the agency.

As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence. Not even the claimant's treating physician, who presumably is the expert most familiar with the claimant's condition, is given such complete deference. See *Hofslien v. Barnhart*, 439 F.3d 375, 376–77 (7th Cir. 2006); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step. See *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). The problem in this case is that the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor.

The ALJ considered Dr. Brill's opinion more persuasive because it was "consistent with the record as a whole." But

as explained above, Ms. Beardsley's daily activities and re-
ported capabilities were inconsistent with Dr. Brill's recom-
mendations. Beyond noting that Ms. Beardsley exhibited
normal range of motion in her joints, Dr. Brill provided no
explanation for thinking that she was able to spend so much
time on her feet (let alone climbing, operating foot controls,
or crouching down). The ALJ's conclusory statement that
these findings were consistent with the record when in fact
they are contradicted by it was not enough to justify elevat-
ing Dr. Brill's opinion over all others. See *Gudgel*, 345 F.3d at
470.

The record also does not support the ALJ's explanation
for discounting Dr. Banyash's opinion: that the doctor
seemed not to have considered the full extent of the care
Ms. Beardsley provided for her mother. Although it is un-
clear what exactly Dr. Banyash knew about Ms. Beardsley's
mother, his report shows he was aware that Ms. Beardsley
prepared meals, shopped, washed dishes, swept, and did a
number of other chores. These limited activities were the
most demanding that Ms. Beardsley undertook. They fell
well short of an ability to do full-time light work. Since
Dr. Banyash knew of these tasks, it would not have mattered
whether he was also aware that Ms. Beardsley spent time at
her mother's house performing less strenuous activities such
as watching television. His knowledge or ignorance of
Ms. Beardsley's care for her mother thus does not support
giving less weight to Dr. Banyash's views. See *Knight v.
Chater*, 55 F.3d 309, 313–14 (7th Cir. 1995) ("The ALJ must
give substantial weight to the medical evidence and opinions
submitted, unless specific, legitimate reasons constituting
good cause are shown for rejecting it.").

III. *Conservative of Treatment*

The third ground for the ALJ's decision was that Ms. Beardsley's medical records, her decision not to undergo surgery, and the lack of restrictions placed on her by a treating physician showed that her knee condition was substantially under control and did not render her disabled. The ALJ's reliance on Ms. Beardsley's initial examination in July 2008, when her doctor saw no sign of swelling or redness, is misplaced because of the later evidence that her condition had become more painful. Nor should Ms. Beardsley be penalized by the lack of restrictions placed on her by a treating doctor because her knee was not being treated by any doctor for much of the time at issue here. Even taken together, these two factors are not sufficient to build a logical bridge that would justify discounting the opinion of the agency's examining doctor that Ms. Beardsley was limited to sedentary work.

The ALJ also erred by relying on the fact that Ms. Beardsley did not seek surgery to treat her knee. It is true that "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008), citing Social Security Ruling 96–7p. But the ALJ may not draw any inferences "about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft*, 539 F.3d at 679; SSR 96-7p.

The ALJ here made no evident attempt to determine why Ms. Beardsley elected not to have expensive and invasive surgery on her knee and instead opted for the injections. He

relied entirely on two notes from her treating physician suggesting that Ms. Beardsley was not bothered enough by her symptoms to seek surgery. But the ALJ overlooked the fact that Ms. Beardsley then returned to her doctor one year after the injury, complaining that the pain had significantly worsened and that she was ready to reconsider the operation. The record also reveals that Ms. Beardsley was uninsured and uncertain how surgery could be paid for. The failure to explore this evidence was a legal error. Social Security Ruling 96-7p instructs that an ALJ "must not draw any inferences" against claimant for lack of treatment without inquiring into factors such as the claimant's ability to pay and whether she has structured daily activities "so as to minimize symptoms to a tolerable level." The ALJ did not do that in this case, so the fact that Ms. Beardsley decided not to have surgery was not a sufficient basis to discount Dr. Banyash's opinion.

In short, the finding that Ms. Beardsley maintained the capacity to perform a range of light work on a full-time basis, including standing and walking for most of the workday, cannot be upheld for the reasons given in the ALJ's decision. Whether considered individually or collectively, Ms. Beardsley's descriptions of her day-to-day routine, the opinion of Dr. Brill, and her supposedly conservative treatment were not enough to support a logical bridge from the evidence to the ALJ's conclusion. The judgment is REVERSED and the case is REMANDED to the Commissioner for further proceedings consistent with this opinion.