**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 6, 2020
Decided February 3, 2021

**Before**

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL S. SCUDDER, *Circuit Judge*

No. 19-3259

| | |
|---|---|
| TIMOTHY A. DELONG, <br> *Plaintiff-Appellant,* <br><br> *v.* <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br> *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. <br><br> No. 1:18-cv-02709-DLP-SEB <br><br> Doris L. Pryor, <br> *Magistrate Judge*. |

**ORDER**

Timothy Delong seeks Social Security disability benefits based on a host of physical and mental impairments, including memory loss and cognitive decline. An administrative law judge denied his application, concluding that Delong had exaggerated his cognitive disabilities and that, despite his impairments, he could perform light work with some limitations. The district court affirmed. On appeal, Delong contends that the ALJ erred by crediting a medical expert over an examining

psychologist, and by failing to account for his limitations in concentration, persistence, and pace. We find, however, that the ALJ made no reversible procedural mis-steps and that her decision was supported by substantial evidence. We therefore affirm.

**I**

Delong applied in March 2010 for Social Security benefits, alleging disability dating back to June 2008, based on memory loss and back pain. He previously had worked in a warehouse for 15 years until it closed. Delong had to show that he became disabled no later than June 2014, his last date insured. See 20 C.F.R. § 404.130; 42 U.S.C. §§ 413, 423. The record, however, is not limited to evidence beginning in 2008. See 20 C.F.R. § 416.945(a)(1) (agency considers all relevant evidence); *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013).

Delong's reports of memory loss and cognitive decline began in 2010, when he visited neurologist Thomas Nukes. Dr. Nukes diagnosed Delong's memory loss as "likely secondary to anxiety/depression." At a follow-up encounter, he noted Delong's "good memory during normal conversation" and reiterated that his faulty memory may be from anxiety or depression, not "actually premorbid." Without a clear diagnosis, the doctor decided to refrain from any medications at that time. He conducted a cognitive test, but he thought that Delong did not "try and apply full effort."

Around that time, in April 2010, consulting psychologist Robert Blake examined Delong for the agency. Dr. Blake noted that Delong took care of his autistic son, drove himself to the appointment, and focused well during their two-hour visit A cognitive exam revealed no "significant problems with concentration [or] memory" but suggested trouble with math and abstracting. Dr. Blake also administered a memory test, however, which showed "low average" auditory memory and "extremely low" visual memory, visual working memory, immediate memory, and delayed memory. Dr. Blake opined that Delong's "ability to work will be moderately affected by his memory problem." He also noted, however, that the results of the memory test might have been "significantly affected" by Delong's "difficulty understanding directions," despite the fact that "they were explained to him … many more times than the test protocol calls for." Dr. Blake thought that Delong's lack of understanding "suggests that his extremely low score on this item is generally indicative of the level of his problem, even though it may not at all have to do with visual/spatial memory."

Also in 2010, another agency psychologist, Dr. Ken Lovko, reviewed Delong's records and assessed his mental functioning. Using a check-box form, Dr. Lovko recorded that Delong had "moderate" limitations in remembering detailed instructions and in concentration, persistence, and pace. He opined that Delong could "remember

and carry out simple tasks without special considerations in many work environments," and focus "for sufficient periods of time to complete tasks."

Based on that medical record and an administrative hearing, an ALJ denied Delong's application for benefits. But the Appeals Council remanded the decision for further development of the record.

In 2013, another agency psychologist, Dr. Steven Herman, examined Delong and noted inconclusive results on cognitive tests. According to Dr. Herman's records, Delong sported a "bizarre haircut" and was an "extremely poor historian—unless he was being asked about his pain … or his functional abilities." Delong's responses to test questions were "similarly bizarre" and indicative of malingering: he could not name a letter, had "no idea" why we wash clothes, and said Monday follows Tuesday. On a memory test, he missed 23 questions, a failure rate "significantly greater than chance." Because of the "poor effort" and "strong indication of … malingering," Dr. Herman could not draw conclusions about Delong's cognitive functioning "other than that he appeared to be purposefully attempting to present himself as far more impaired (and unrealistically so) than he truly is." He diagnosed malingering, somatization, and schizoid traits and suggested psychotherapy.

Delong also visited two treating neurologists. The first, Dr. Caryn Vogel, treated Delong for several years. In 2013 she observed normal affect but impaired short-term memory and concentration. Despite Delong's continued complaints about declining memory and concentration, Dr. Vogel repeatedly observed normal cognitive functioning and thought content. Delong consistently refused recommendations for psychological studies or treatment.

In 2014, Dr. Nirav Bigelow (the second neurologist) assessed Delong for both cognitive ability and malingering. During the cognitive test, Delong's "attention was adequate" and he "attempted all tasks," though Dr. Bigelow had to repeat the instructions multiple times. Dr. Bigelow noted that Delong "appeared to be exaggerating symptoms" and that he had to administer one part "three different times due to fluctuations in [Delong's] responses to simple questions." The results showed that Delong's attention, concentration, visual memory, working memory, and long-term recall were "significantly impaired." The assessment on possible malingering, however, resulted in a score that was "far above the recommended cutoff score … for the identification of suspected malingering." It suggested that Delong's reports of "psychosis, low intelligence, and amnesia appear[] to be dishonest and exaggerated." Dr. Bigelow warned that "the results of this evaluation should be interpreted with

caution." He nonetheless diagnosed Delong with a mild intellectual disability, depression, symptoms of schizophrenia, and anxiety.

In 2014, the ALJ denied Delong's application for a second time, and the Appeals Council denied his request for review. Delong appealed, and the district court vacated the decision, ruling that the ALJ failed to give a good reason for discounting Dr. Blake's opinion, and did not properly instruct the vocational expert about Delong's moderate limitations in concentration, persistence, and pace.

A different ALJ presided on remand. At a hearing in 2018, Delong testified that he received no mental health treatment or counseling during the relevant disability period (2008 to 2014). Though he could not remember the names of his medications, he knew that he took an antidepressant three times a day and that he was on medication for his cholesterol and restless leg syndrome. He testified that he drives his son to school every day for 30 minutes, can otherwise sit for a few minutes at a time, and has no problems standing or lifting up to 10 pounds. He described problems dealing with others and remembering names and numbers.

A licensed psychologist, Dr. James Brooks, testified at the hearing as an impartial medical expert. After reviewing the full record, Dr. Brooks concluded that, although Dr. Blake's 2010 opinion described "moderate possible effects on [Delong's] ability to do work," the balance of the record did not support that assessment. He highlighted the evidence of malingering from Dr. Herman, Dr. Vogel, and Dr. Bigelow. When evidence of malingering exists, as it did in Dr. Bigelow's case, Dr. Brooks testified that one must refrain from any interpretation "because the results are considered to be invalid." Dr. Brooks also noted that the record contained no evidence of an actual cognitive disorder, and that the extent of malingering "makes it difficult to judge the presence of any actual psychiatric disorder." He concluded that Delong had mild limitations in concentration, persistence, and pace and in understanding, remembering, and applying information, and moderate limitations in relating to others and in adapting in a work setting. He opined that Delong could follow simple directions but should have limited contact with coworkers and none with the public.

The ALJ then asked a vocational expert to consider a hypothetical person with Delong's age, education, work experience, and limitations on mental functioning, with the following additional restrictions: take breaks in the morning, at lunch, and in the afternoon; perform simple, routine tasks, requiring no more than short, simple, repetitive instructions; sustain concentration for two hours at a time, eight hours in a workday; persist and maintain pace for two hours at a time, eight hours in a workday; make simple work-related decisions with few workplace changes; have no contact with

the general public; and have no more than occasional contact with supervisors and coworkers. The expert opined that this person could not perform Delong's past work in a warehouse, but could work as a merchandise marker, routing clerk, or collator.

Applying the five-step analysis, see 20 C.F.R. § 404.1520(a), the ALJ determined that Delong's depression, anxiety, personality disorder, borderline intellectual functioning, and degenerative disc disease were severe impairments but that none met the criteria of a listing. See C.F.R. Pt. 404, Subpt. P, App. 1. In assessing Delong's ability to work, the ALJ gave some weight (unspecified) to Dr. Blake's 2010 opinion that Delong has moderate problems with mental math and abstracting, but discounted his assessment of Delong's "extremely low memory" because Dr. Blake did not have the benefit of the full record and did not adequately consider Delong's malingering during the memory test. The ALJ afforded "great weight" to Dr. Brooks's opinion because he reviewed the complete record, heard Delong's testimony, "explained discrepancies in the record," and properly "identified flaws pertaining to other relevant medical opinions." The ALJ went beyond Dr. Brooks's recommended functional limitations, however, because she found that Delong was "better suited for simple, repetitive, and routine tasks." She gave "some weight" to the agency's psychological consultants, including Dr. Lovko, and to a report from Delong's wife. And she credited Dr. Bigelow's 2013 report because it contained "pertinent evidence" and was "consistent" with the restrictions warranted by the record.

The ALJ then determined that Delong has the residual functional capacity (RFC) to perform light work with the limitations noted above, and that, although Delong could not perform any past relevant work, he could do other jobs in the national economy. The ALJ was skeptical of Delong's claims of cognitive impairments and memory loss, noting several times that his mental diagnoses were inconclusive because of his poor effort and malingering. Even so, she accounted for "subjective symptoms of memory loss, diminished comprehension, and occasional disorientation" when assigning a "more restrictive" RFC than the one Dr. Brooks recommended. In a thorough opinion, the district court affirmed the denial of benefits.

## II

We review the ALJ's decision to ensure that it is supported by substantial evidence, understood as evidence that a reasonable mind might accept as adequate to support a conclusion. See *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

### A

Delong argues that the ALJ failed to provide good reasons for giving more weight to the opinion of Dr. Brooks, the non-examining medical expert, than to

Dr. Blake's 2010 opinion that Delong had "severe" visual processing and memory problems that would "moderately affect" his ability to work. As a result, he argues, there is no "logical and accurate bridge" between the evidence and the ALJ's conclusion.

We see no such flaw in the ALJ's opinion. She explained cogently why she was disregarding the opinion of her agency's examining physician, Dr. Blake. See *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); see also 20 C.F.R. § 404.1527(c)(1) (examining physician's opinion generally given more weight than non-examining). An ALJ is "not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley*, 758 F.3d at 839. This ALJ discounted Dr. Blake's opinion for the compelling reason that it "failed to adequately consider the claimant's malingering presentation." The ALJ documented that finding with extensive references to the record. She buttressed that finding by noting that Dr. Blake did not have the benefit of the full record. The record supports her: Dr. Blake examined Delong only once, in 2010, whereas Dr. Brooks "reviewed [the] complete record" and heard Delong's testimony firsthand. See *Stage v. Colvin,* 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ should not rely on outdated opinion).

Further, Delong is incorrect that the ALJ gave the same faulty rationale for discounting Dr. Blake's opinion that the district court "previously deemed improper and worthy of remand." In the vacated decision, the first ALJ deemed Dr. Blake's test results altogether invalid. This time, in contrast, the ALJ correctly explained that Dr. Blake's examination results may not have accurately reflected Delong's memory functioning. That tracks Dr. Blake's explanation of the results, which, he said, "may not at all have to do with visual/spatial memory." (Notably, the ALJ accepted Dr. Blake's assessment of Delong's other cognitive abilities, including his difficulty with mental math and abstraction.) Beyond that, the second ALJ provided additional reasons that were absent from the vacated decision. She explained that Dr. Blake's one visit with Delong provided only a "limited" view of the medical history. (Indeed, as the district court observed, "a good percentage of the medical evidence … came after Dr. Blake's opinion.") And the ALJ highlighted that Dr. Blake's failure to consider whether Delong was malingering during his testing.

Delong tries to deal with the malingering problem by contending that the ALJ overlooked evidence that the malingering was itself the product of his mental impairments. He seems to argue that Dr. Blake believed that Delong's inability to follow directions resulted from a psychological problem, and that the ALJ "ignored" Dr. Herman and Dr. Bigelow's records, which allegedly corroborate that opinion. But the ALJ was not required to read that much into Dr. Blake's statement that Delong's

inability to follow directions was "indicative of his problem." And although the examining doctors suggested that his malingering *might* be the product of a psychological disorder, the ALJ did not err by refusing to follow up further on this possibility, nor did she "cherry pick" the evidence. No doctor opined that a psychological disorder caused the malingering. And, as the ALJ noted, there were no records "related to inpatient admissions for psychiatric instability" or "outpatient counseling to regulate … emotions or build coping skills." Further, when formulating the RFC, the ALJ expressly considered "impairments that may not affect cognition as much but would affect performance, for example, depression, anxiety, and personality disorder." In any case, Delong's argument about a psychological cause for his malingering does not undermine the ALJ's conclusion that he *was* malingering and therefore does not have the severe memory problems on which his claim for benefits is largely based.

B

Delong next argues that the ALJ's hypothetical questions to the vocational expert and the related RFC determination did not address his deficits in concentration, persistence, and pace. He contends that the ALJ failed to account for the 2010 "checkbox" opinion of Dr. Lovko, the agency's psychologist, that Delong had a moderate limitation in that area. The omission is especially egregious, Delong contends, because the district court's 2016 remand order directed the ALJ to inform the vocational expert about the moderate limitation.

Delong fails to recognize, however, that on remand, the new ALJ assessed a mild—not moderate—limitation in concentration, persistence, and pace. (She was not bound by the earlier ALJ's finding in this respect.) In making that determination, the ALJ did not ignore Dr. Lovko's evaluation; she gave it "some weight." But she gave "great weight" to Dr. Brooks's opinion, which was based on the entire record, including evidence developed after 2010. Moreover, substantial evidence supports the assessment: As the ALJ explained, Dr. Brooks assessed only a "mild limitation" in concentration, Dr. Herman noted adequate attention during testing, and Delong's "attention and concentration were not severely impaired when presenting for routine medical appointments." Though Delong "struggled with mental status exercises," the ALJ observed that "he demonstrated the concentration and focus to complete simple tasks with reasonable pace and persistence." She also noted that he "remained attentive to the interview process" and has the attention to drive his son to school. Because the ALJ reasonably concluded that Delong has a *mild* limitation in this area, the ALJ did not err in failing to account for *moderate* limitations in the RFC.

Furthermore, both the RFC and the questions posed to the vocational expert accounted for mild limitations in concentration, persistence, and pace. See *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (ALJ must explicitly account for all claimant's limitations in hypothetical, including those in concentration, persistence, or pace). The RFC states that Delong requires breaks in the morning, midday, and afternoon; could maintain pace and sustain concentration for just two hours at a time and on only short, simple, repetitive tasks; and must avoid "workplace changes" to distract him. Delong argues that none of those restrictions address his limited concentration or account for Dr. Lovko's opinion; specifically, he asks for more breaks and a certain amount of time off task. But even if the record could support such limitations, there is nothing that compels them. The ALJ's restrictions go beyond what Dr. Lovko suggested for a moderate limitation in this area. (He suggested Delong could carry out any simple tasks without special considerations and stated, vaguely, that Delong could attend to tasks for "sufficient periods of time.") And, even though the vocational expert testified that non-impaired workers can sustain focus for two hours, that point does not help Delong: Non-impaired workers can sustain focus for *at least* two hours, whereas the RFC *limits* Delong's sustained attention to two hours at a time.

We AFFIRM the judgment of the district court.