In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3622

WILLIE MAE CURVIN,

*Plaintiff-Appellee,*

*v.*

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-CV-00123— **J. P. Stadtmueller**, *Judge.*

ARGUED OCTOBER 2, 2014 — DECIDED FEBRUARY 11, 2015

Before FLAUM, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Willie Mae Curvin applied for disability insurance benefits. Her claim was denied initially, upon reconsideration, and after a hearing before an administrative law judge ("ALJ"). The district court held that the ALJ erred in denying Curvin benefits and vacated and remanded the decision. We conclude that the ALJ properly applied our precedent as well as the agency rules and regulations. Because

the ALJ's decision was supported by substantial evidence, we reverse the judgment of the district court.

## I. Background

In March 2010, Curvin applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* She alleges she became disabled beginning in January 2009 from glaucoma, overactive thyroid, high blood pressure, difficulty sleeping, and knee pain. The ALJ held a hearing in August 2011 at which Curvin appeared, represented by an attorney. The ALJ denied her claim by a written decision issued in October 2011.

After applying the five-step sequential evaluation process mandated by the Social Security Administration, the ALJ determined that she was not disabled and denied her claim. 20 C.F.R. § 404.1520(a). At step 1, the ALJ found that Curvin had not engaged in substantial gainful activity since the alleged onset of her disability. At step 2, the ALJ determined that Curvin's glaucoma in her right eye was a severe impairment, and that the objective medical evidence showed that her remaining impairments were not severe. At step 3, based on the conclusions of Curvin's treating and examining physicians and the objective medical evidence, he found that Curvin did not have an impairment or combination of impairments that met the severity of a listed impairment. The ALJ then determined that Curvin had a residual functional capacity ("RFC") to perform a full range of work at all exertion levels, but with a nonexertional limitation of no peripheral vision on her right side due to her glaucoma. The ALJ considered all the objective medical evidence, Curvin's statements regarding her abilities

and disabilities, the opinions of two treating physicians, and the determinations of state agency examining physicians. He found that although Curvin's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her allegations regarding the intensity, persistence, and limiting effects of her symptoms were not credible. The ALJ gave great weight to Curvin's treating ophthalmologist's assessment that her only work-related limitation was a loss of peripheral vision in her right eye that prevented her from working around machinery. He found that her remaining impairments were either mild or controlled with medication and therefore non-severe. Finally, at step 4, the ALJ found that Curvin had the RFC to perform her past work as a personal care worker, which was a medium exertional job. Thus, the ALJ found that Curvin was not disabled at step 4. Although not required at this point, the ALJ made an alternative finding at step 5 of no disability. Specifically, given her age, education, work experience, and RFC, the ALJ found that Curvin could perform other jobs at the medium exertion level then-existing in the national economy.

The district court vacated the ALJ's opinion and remanded the case after concluding that the ALJ committed error at step 2 and step 3 of the process. The district court held that the ALJ neglected to determine Curvin's credibility and discuss her symptoms[1] at step 2 even though he found her right-eye glaucoma to be a severe impairment on the basis of the objective medical evidence alone. According to the district court, Social Security Ruling ("SSR") 96–7p and SSR 96–3p

---

[1] The regulations define symptoms as an individual's own description of his physical or mental impairment. 20 C.F.R. § 404.1528(a).

required the ALJ to determine Curvin's credibility at step 2 so that he could consider Curvin's symptoms when deciding whether her remaining impairments were severe or not. The district court then decided that the ALJ should have provided more detail at step 3 to show that he took into account all of Curvin's impairments. Finally, the district court concluded that the ALJ should have specifically determined at step 3 that Curvin had a "missing or deficient sign or laboratory finding"[2] according to 20 C.F.R. § 404.1529(d)(3). The district court believed the ALJ needed this finding to "build an 'accurate and logical bridge from the evidence to his conclusion'" that Curvin's symptoms need not be considered at step 3. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). The district court concluded that either of the ALJ's errors at step 2 or step 3 were sufficient to warrant reversal. The Commissioner appeals.

## II. Discussion

We review a district court's ruling on a social security disability determination *de novo*; we review the administrative law judge's decision for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). We "reverse an ALJ's determination only where it is not supported by substantial evidence, which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey*, 641 F.3d at 889 (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). "The ALJ must adequately discuss the issues and must build an 'accurate and logical bridge from the evidence

---

[2] What is meant by "signs" and "laboratory findings" is objective medical evidence, i.e., observable abnormalities or phenomena shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 404.1528(b) & (c).

to his conclusion.'" *Id.* (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

### A. Step 2

Regarding step 2, "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. … Therefore, the step two determination of severity is 'merely a threshold requirement.'" *Castile v. Astrue*, 617 F.3d 923, 926–27 (7th Cir. 2010) (citation omitted; quoting *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999)). *See also Bowen v. Yuckert*, 482 U.S. 137, 149–50 (1987) (disability insurance benefit payments require a "threshold showing of medical severity"). The ALJ correctly applied this rule. He found that Curvin had one severe impairment, *viz.*, the glaucoma in her right eye, and proceeded to the remaining steps in the evaluation process.

SSR 96–7p does not require an ALJ in every case to make a credibility determination at or before step 2.[3] As the ruling

---

[3] When taken out of context, the following passage of SSR 96–7p appears to always require a credibility determination at step 2:

> Once the [ALJ] has determined the extent to which the individual's symptoms limit the individual's ability to do basic work activities *by making a finding on the credibility of the individual's statements*, the impact of the symptoms on the individual's ability to function must be considered along with the objective medical and other evidence, first in determining whether the individual's impairment or combination of impairments is "severe" at step 2 of the sequential evaluation process for determining disability and, as necessary, at each subsequent step of the process.

*Id.* (emphasis added). However, a full reading of the ruling reveals that this

states, its purpose is to emphasize that an ALJ "must carefully consider the individual's statements about symptoms … if a disability determination or decision that is fully favorable to the individual *cannot be made solely on the basis of objective medical evidence.*" *Id*. (emphasis added). A fully favorable decision can only be made at step 3 or step 5, the only steps at which a claimant can be found disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (v). But to get to those steps, a claimant must pass through step 2. In Curvin's case, the ALJ made as favorable a determination as can be made at Step 2—that Curvin met the threshold by having a severe impairment—on the basis of the objective medical evidence, so an evaluation of Curvin's symptoms and the requisite credibility determination were not necessary at that step.

Neither does SSR 96–3p always require a credibility determination at step 2.[4] The rule requires a careful evaluation of symptoms when making "[a] determination that an

---

passage only comes into effect "if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence." *Id*.

[4] The relevant portion of SSR 96–3p is as follows:

> A determination that an individual's impairment(s) is *not severe* requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities.

> *Id*. (emphasis added).

individual's impairment(s) is *not severe*." *Id*. (emphasis added). In other words, if an individual's impairment does not appear from the objective medical evidence to be severe, the ALJ must then consider the limitations and restrictions caused by the individual's symptoms. If these additional considerations cause "more than a minimal effect on an individual's ability to do basic work activities, the [ALJ] must find that the impairment(s) is severe *and proceed to the next step in the process* even if the objective medical evidence would not in itself establish that the impairment(s) is severe." *Id*. (emphasis added). The consideration, therefore, of an individual's symptoms at step 2 is done in the context of step 2's threshold nature. "Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012).

Thus, the ALJ applied neither SSR 96–7p nor SSR 96–3p at step 2 because he need not do so. The objective medical evidence was enough to find Curvin's glaucoma to be a severe impairment and allow her to cross Step 2's threshold. The ALJ did not err at step 2 by finding that Curvin's remaining impairments were not severe without first evaluating her symptoms and assessing her credibility. What is more, even if there were such an error at step 2, it would have been harmless because the ALJ properly considered all of Curvin's severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC immediately after step 3. So, "even if there were a mistake at Step 2, it does not matter." *Arnett*, 676 F.3d at 591.

**B. Step 3**

The ALJ's determination at step 3 that Curvin's impairments did not equal the severity of a listed impairment, *see* 20 C.F.R. § 404.1520(a)(4)(iii), was limited to one paragraph. The ALJ noted that neither Curvin's treating or examining physician nor the objective medical evidence indicated that Curvin met the standard at step 3. Although the ALJ stated that he considered Curvin's impairments under the appropriate listings, he did not specify which impairments he considered and did not specifically discuss the evidence.

Nevertheless, as mentioned, the ALJ provided the discussion of Curvin's severe and non-severe impairments, the objective medical evidence, and her credibility directly after step 3 when he determined her RFC. This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"); *see also Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("[W]e examine the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions."). The ALJ's discussion of Curvin's RFC is similar in its level of detail to that done in *Pepper v. Colvin*, 712 F.3d 351 (7th Cir. 2013), which discussion we concluded was "consistent

with our repeated assertion that an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Id.* at 362 (quotations omitted). The ALJ's discussion at step 3, when considered in light of his discussion of Curvin's RFC, sufficiently met his "duty to articulate." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

To determine whether an individual is disabled at step 3, an ALJ must follow 20 C.F.R. § 404.1529(d)(3), which describes how the agency decides whether the individual's impairment or combination of impairments are medically equal in severity to an impairment on the list of pre-determined disabling impairments. The regulation explains that the agency will consider whether an individual's symptoms and objective medical evidence are equal in severity to those of a listed impairment. It includes a caveat: "However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding [i.e., objective medical evidence] to raise the severity of your impairment(s) to that of a listed impairment." *Id*. The ALJ did not explicitly find that Curvin was missing objective medical evidence before he excluded a discussion of her symptoms and concluded she was not disabled at step 3.

The regulation, however, does not require such an explicit finding, and it was not necessary to "build an 'accurate and logical bridge from the evidence to his conclusion.'" *McKinzey*, 641 F.3d at 889. The regulation provides that an ALJ will not consider the individual's own allegations if the medical evidence demonstrates a lack of severity. It is a straight prohibition against substituting an individual's symptoms for objective medical evidence. Nowhere is there a requirement

that the ALJ make a specific finding of missing or deficient medical evidence prior to concluding that he need not consider an individual's allegations of pain or other symptoms. As we have said, an ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Shideler*, 688 F.3d at 310. In sum, the ALJ did not err in making his Step 3 determination.

### C. Credibility and RFC

Finally, we address an issue not addressed by the district court, but raised by Curvin on appeal. She contends that the ALJ's RFC and credibility determinations were legally insufficient. As we stated previously, when determining Curvin's RFC, the ALJ discussed her severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility. The ALJ's discussion was similar in all pertinent respects to the RFC discussion in *Pepper*, which we found to be adequate. *See Pepper*, 712 F.3d at 362–67. Although the ALJ gave great weight to Curvin's treating ophthalmologist's assessment that her only work-related limitation was that she could not work around machinery, none of the opinions of her treating or examining physicians supported her claim for disability. This meant that her claim of disability rested mainly on her allegations concerning her symptoms, and thus her credibility. This makes her burden difficult. So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong. *Pepper*, 712 F.3d at 367. "Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." *Sims v.*

*Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). Here, the ALJ discussed various inconsistencies between Curvin's alleged symptoms and the other evidence. For example, the eye exam performed by her treating physician did not support her allegations of vision loss in both eyes. Additionally, her testimony that her sleeping disorder prevented her from working was inconsistent with her testimony that she worked for many years with the disorder and that medication kept it under control. The ALJ's credibility determination was not patently wrong, and he provided specific reasons supported by the record, so we will not overturn it. *See Pepper*, 712 F.3d at 367.

### III. Conclusion

For the foregoing reasons, we hold that the district court erred by not holding that the ALJ's decision was supported by substantial evidence. Accordingly, the judgment of the district court is REVERSED.