**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 31, 2016[*]
Decided June 1, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-2321

| | |
|---|---|
| SCOTT MICHAEL PUTNAM, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 C 1587 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security *Defendant-Appellee*. | Mary M. Rowland, *Magistrate Judge*. |

## O R D E R

In pursuing disability insurance benefits from the Social Security Administration, Scott Putnam, age 40, asserts that he cannot work. He says that he was disabled during the 76 days between October 17, 2006 (the day after his first Social Security claim was denied, a decision that Putnam is precluded from relitigating, *see Meredith v. Bowen*, 833 F.2d 650, 652–53 & n.2 (7th Cir. 1987)), and December 31, 2006 (his date last insured). A

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

year earlier, the Department of Veterans Affairs had determined that, under its disability-benefits program, Putnam was entitled to benefits for his service-related disability (rated at 100%). In seeking additional benefits from the Social Security Administration, he alleges two main sets of impairments: physical (knee pain) and mental (depression and anxiety). He has abandoned an appellate argument about other impairments, so we need not discuss them. An ALJ denied Putnam's application (and the district court agreed), concluding that Putnam's anxiety and depression were not severe impairments and that his knee pain did not render him disabled. The ALJ's decision is supported by substantial evidence, so we affirm.

Putnam's knee pain, which stems from an injury in the military in 1995, has varied over time. Initially, by taking anti-inflammatory medications and muscle relaxers, and avoiding high-impact activities and prolonged standing or walking, he functioned well. He swam, used public transit, and walked to his medical clinic from the train until he injured his knee again in 2005. After he re-injured his knee, he was warned not to bear weight on it temporarily, but he told his doctor that he was able to, and he declined orthopedic appointments in 2006. During the 76 days at issue in his claim, Putnam reported that his medication controlled his knee pain and that he was walking daily, although he limped and used a cane. Shortly after the 76 days ended, Putnam again reported that his medications still helped his knee pain, which he rated at 3 or 4 on a scale of 10. About three years later, after he was no longer insured, the situation changed. In 2009 Putnam's severe knee pain had returned, and his primary-care physician opined that Putnam could not sit more than an hour or walk or stand more than 15 minutes.

The evidence about depression and anxiety also varies. In 2005 Putnam told doctors that he was moody, tearful, depressed, and anxious because of his physical disability. Doctors from the Veterans Health Administration opined that he had memory and concentration difficulties. His scores of Global Assessment of Functioning, a controversial measure of mental health, reflected serious to moderate symptoms and possible impairments in functioning. *See Price v. Colvin*, 794 F.3d 836, 839 (7th Cir. 2015) (explaining that the GAF scale is used to rate a person's adjustment to psychological and daily living challenges, but the scale has been criticized for its subjectivity); *Voigt v. Colvin*, 781 F.3d 871, 874 (7th Cir. 2015) (explaining that the American Psychiatric Association has eliminated the GAF scale as unreliable). But Putnam decided not to pursue the mental-health treatment that the veterans' program offered him. During the 76 days, he declined an appointment for counseling, and he ignored several attempts to

contact him for treatment. As a result, his doctors discharged him from the treatment program.

No further evidence of mental impairments appears until two years after the 76 days ended. Putnam complained to a doctor in 2008 that for several years he had been experiencing mild depression and anxiety. But he also reported to his doctors that he was able to do housework and run errands. A physician prescribed antipsychotic and antianxiety medications, and Putnam's mood stabilized with no apparent side effects. His social worker reported that he declined to attend several sessions in 2009. Over a year later Dr. Lisa Polsby opined that Putnam's mental health impairments had disabled him from working, functioning socially, and concentrating since 2005, though she did not begin to treat him until 2010 and her progress notes said that medication stabilized his moods. A year later, Dr. Donald Koziol opined that Putnam's depression and anxiety prevented him from working, but he saw Putnam only four times, beginning in 2010.

A hearing before an ALJ supplemented this evidence. First Putnam testified. He acknowledged that he had participated in a work-study program in early 2006. But, he asserted, his knee pain forced him to use a cane or walker, his feet swelled, and he frequently fell asleep from the side effects of his knee medications. (The last two assertions are not reflected in treatment notes.) Regarding his mental health, Putnam recalled that before 2006 he experienced anxiety, some crying spells, panic attacks, and difficulty sleeping and concentrating. The ALJ asked Putnam to explain why, during the 76-day period, Putnam had ignored his doctor's offers to treat his mental health. Putnam replied that he did not want to go through the mental-health assessment, and the inclement weather and his assistive device made it hard to get to the clinic (though treatment notes from this period reflect that he was walking daily). He acknowledged that medication has helped decrease his panic attacks in social interactions.

A medical expert and vocational expert also testified. Dr. Laura Rosch reviewed Putnam's medical records and testified that his knee causes chronic pain, so he should be limited to sedentary work with no exposure to hazards or heights, no climbing, and no loud noises. She also noted that Putnam had been diagnosed with and treated for anxiety and depression, but the record was not sufficient to establish their severity. The vocational expert testified that Putnam could not return to his previous work as a forklift driver or cook, but, under the limitations suggested by Dr. Rosch, he could work as a sorter, assembler, or bench packager.

The ALJ denied Putnam's claim using the five-step framework for determining benefit eligibility. S*ee* 20 C.F.R. § 404.1520(a)(4). Putnam had not engaged in substantial gainful activity (step 1); his left knee injury was a severe impairment, but his depression or anxiety were not (step 2); his impairment did not equal a listed impairment (step 3); he was unable to perform his past relevant work, but he could perform sedentary work. That work, the ALJ specified, must allow him to use his assistive device and may not involve frequent stooping, bending, kneeling, crouching, or crawling; any climbing or heights; any loud noises and concentrated exposure to hazards, dust, and fumes (step 4). With these restrictions, the ALJ concluded at step 5 that Putnam could work as a sorter, assembler, or bench packager.

The ALJ explained why he discredited Putnam's assertion that his knee pain disabled him from working. During the 76 days Putnam had told his doctors that his pain was controlled by his medications and that he walked daily. The ALJ also observed that, in the times surrounding that period, Putnam told his doctors that his pain was only a 3 or 4 on a scale of 10. Putnam had also returned to work, used public transportation, walked to the medical clinic from the train, ran errands, and completed housework. And, the ALJ explained, Putnam had considered himself fit enough both to disregard his doctor's advice not to bear weight on his knee and to decline orthopedic appointments. These activities and decisions belied his claim that his knee pain was disabling.

The ALJ further explained why he gave no weight to the mental-health opinions from Putnam's two doctors. First, treatment notes did not support Dr. Polsby's opinion. According to those notes, medications had stabilized Putnam's moods, Putnam experienced no adverse side effects, and he was feeling less anxious. Second, both opinions were too remote in time. Dr. Polsby saw Putnam over three years after the 76 days had ended, and Dr. Koziol saw Putnam only four times, starting more than four years after the 76 days.

On appeal Putnam first argues that the ALJ wrongly discredited his two doctors' opinions. And by discrediting them, Putnam continues, the ALJ erred at step 2 in finding that his anxiety and depression were not severe and again at step 4 in not incorporating their opinions in assessing his remaining capacity to work. But the ALJ permissibly reasoned that, because these opinions were not supported by treatment records and were too remote in time, he need not accept them. Dr. Polsby's notes show that drugs had corrected Putnam's mood swings without adverse side effects. And the opinions, rendered several years after the 76 days, contained no reason to believe that

they were based on Putnam's condition at that time. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Filus v. Astrue*, 694 F.3d 863, 868–69 (7th Cir. 2012).

Putnam next contends that the ALJ should have looked at the records outside the 76 days to evaluate his depression and anxiety. But the ALJ did examine *all* of Putnam's medical history, including treatment outside the relevant period, to infer his mental-health condition within that period. *See Groves v. Apfel*, 148 F.3d 809, 810–11 (7th Cir. 1998) (evidence from previous benefits denial used to fill gaps in later benefits claim). Yet, as the ALJ correctly observed, from 2005 through 2010 Putnam sought "sporadic treatment at best," and when he sought it, it stabilized any mood swings. This history implied that Putnam was not disabled.

Putnam next argues that the ALJ did not follow 20 C.F.R. § 404.1520a. This regulation requires the ALJ to determine *how* any mental impairments affect daily activities, social functioning, concentration, persistence, and pace, and ability to cope with stressors. *See Craft v. Astrue*, 539 F.3d 668, 674–75 (7th Cir. 2008). Putnam contends that the ALJ omitted this regulation from his analysis, but any omission was harmless: The ALJ reasonably explained that Putnam's mental-health impairments could not be chronically severe because he had declined treatment during the relevant period and for years later, despite its ready availability. *See Pepper v. Colvin*, 712 F.3d 351, 365–67 (7th Cir. 2013). The ALJ also permissibly discounted Putnam's proffered excuse for declining treatment—that it was difficult for him to get to the appointments—because Putnam had reported that he walked daily during this same time and that his knee pain was under control.

Finally Putnam argues that the ALJ erred at step 3 in finding that none of his impairments equal a listed impairment. *See* 20 C.F.R. Part 404, Subpart P, App. 1. But Putnam fails to specify which impairment the ALJ ignored, and undeveloped arguments are waived. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). In any case, elsewhere in the decision the ALJ reasonably credited the opinion of Dr. Rosch, who, after reviewing the record and regulations, said Putnam's impairments did not equal the listings. *See Curvin v. Colvin*, 778 F.3d 645, 650–51 (7th Cir. 2015); *Johansen v. Barnhart*, 314 F.3d 283, 287–88 (7th Cir. 2002). And the ALJ further explained that, under listings 1.02, 1.03, and 1.04, Putnam's knee injury did not qualify as a listed impairment because he was able to walk with a cane during the relevant period.

AFFIRMED.