NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 29, 2020
Decided March 4, 2020

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-1382

| | |
|---|---|
| MARIA TERRI MASSAGLIA,<br>*Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 3:18-cv-00014-bbc |
| ANDREW M. SAUL,<br>Commissioner of Social Security,<br>*Defendant-Appellee*. | Barbara B. Crabb,<br>  *Judge*. |

**O R D E R**

Maria Terri Massaglia challenges the denial of her application for Social Security disability benefits based on chronic back pain. An administrative law judge found her not disabled, and the district court concluded that substantial evidence supported the ALJ's decision. Massaglia argues that the ALJ erred by failing to assess adequately whether she met or equaled any listed criteria for a presumptive finding of disability and by making a flawed credibility determination. Because substantial evidence supports the ALJ's decision, we affirm.

## Background

Massaglia, now 47 years old, has a history of lower-back pain—a condition that dates back to an injury suffered in 2009 while working as a chiropractic assistant. She later aggravated her back in October 2014 when she was making a bed while working as a hotel housekeeper. An MRI showed mild degenerative changes in her spine, including a small L5-S1 disc protrusion. After this incident, Massaglia stopped working. She applied for disability benefits that same month, alleging that the back pain had become disabling.

Over the next year and a half, Massaglia sought various treatments for her back pain. She received chiropractic treatment, physical therapy, daily pain medication, and lumbar epidurals. By March, she reported that the treatment was helping her to tolerate her overall pain. Throughout the rest of 2015 and into 2016, that treatment was generally successful in controlling her symptoms.

Then, in June 2016, Massaglia reaggravated her back while mowing the lawn. An MRI showed that the disc protrusion at L5-S1 was "markedly enlarged." Massaglia underwent a discectomy—a surgery to remove low back disc material pressing on a nerve root or the spinal cord. The operation gave immediate relief: at one post-surgical therapy session she reported that her condition had improved 90 percent. But by September, Massaglia reported that her pre-surgery symptoms had returned. She underwent another MRI, which showed a small L5-S1 disc protrusion with some scarring at the post-operative site.

In late-2014 and early-2015, two agency doctors reviewed Massaglia's medical records and concluded that she had the residual functioning capacity to perform light work. The first, Dr. Mina Khorshidi, reviewed the 2014 MRI and treatment records from pain management and chiropractic visits through December 10, 2014, and determined that Massaglia was not disabled. Several months later, Dr. George Walcott concurred in that determination after reviewing the evidence, which had been supplemented to include notes from later medical and physical therapy appointments at which Massaglia reported relief from her pain.

At her hearing before the ALJ in 2017, Massaglia testified that she had constant pain in her back, legs, and arms and that sitting and standing caused her pain. She reported that she could sit or stand for only 15 to 20 minutes at a time before needing to stretch, and she had difficulty navigating stairs and walking (she used a cane on

occasion). She testified that she was responsible for all household chores but could not complete them without frequent breaks and a daily nap.

A vocational expert considered a hypothetical person with Massaglia's age, education, work experience, and certain physical restrictions (sedentary work; a sit and stand option every 15 minutes; need for a cane for uneven terrain or prolonged walking) and concluded that this person could perform Massaglia's past work as a dental receptionist (which she had done before her work as a chiropractic assistant and hotel housekeeper) and could work in other clerical positions.

After the hearing, the ALJ applied the standard five-step analysis, *see* 20 C.F.R. § 404.1520(a), and concluded that Massaglia was not disabled. He determined that Massaglia had not engaged in substantial gainful activity since her alleged onset date (step 1); that she suffered from a severe impairment, spine disorder, *see* 20 C.F.R. § 416.920(c), (step 2); that her impairments did not meet a listing for presumptive disability (step 3); that she had the requisite residual functional capacity (RFC) to perform sedentary work with the restrictions discussed with the vocational expert, which would allow her to work her past job as a dental receptionist (step 4); and that she could work as an information clerk, general clerk, or payroll clerk (step 5).

In reaching his step 3 determination, the ALJ relied primarily on the fact that no physician had found that Massaglia met or equaled Listing 1.04 (disorders of the spine resulting in compromise of a nerve root or spinal cord). In addition, the medical evidence did not show that her impairment was equivalent to any listed impairment.

As for Massaglia's RFC, the ALJ found that, although her symptoms could be caused by her medically determinable impairments, her account of her symptoms was not entirely credible. He found that the exacerbations of her back condition had "improved with treatment within 12 months"[1] and that treatment was "generally successful in controlling [her] symptoms." She was also able to mow the lawn, complete household chores, care for her father and granddaughter, and had even hiked and canoed on vacation with no issues. The ALJ gave some weight to opinions of the state-agency physicians that Massaglia was able to perform light work but determined that

---

[1] Under the Social Security Act, a claimant's "medically determinable physical or mental impairment" must have "lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

additional evidence at the hearing supported more functional limitations. He therefore restricted Massaglia to sedentary work with the previously mentioned limitations.

The Appeals Council denied review, and so the ALJ's decision became the Commissioner's final decision. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Massaglia sought judicial review, and the district court concluded that there was substantial evidence supporting the ALJ's determination that she did not meet or equal any listed impairment and that she was less than fully credible. Accordingly, the court affirmed the Commissioner's decision that Massaglia is not entitled to disability benefits. She now appeals to this court.

## Analysis

On appeal, Massaglia primarily argues that the ALJ failed to adequately assess whether she met or equaled any listing for presumptive disability at step 3. The error, Massaglia says, is twofold. First, she contends that the ALJ erred in relying on the outdated opinions of the state-agency doctors. Second, she argues that the ALJ did not provide sufficient rationale to support his determination. Neither persuades us.

The ALJ did not commit reversible error by relying on the agency physician opinions to find that Massaglia did not meet or equal any listing for presumptive disability. Opinions of state-agency consultants may constitute substantial evidence on the issue of whether a claimant's impairments meet a presumptive disability listing. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). An ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses "changed the picture so much" that it reasonably could have changed the reviewing physician's opinion. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). Here, the new evidence pertaining to Massaglia's reinjury and back surgery in 2016 was not so significant that it was potentially decisive. The ALJ carefully considered that evidence and reasonably concluded that, because it documented significant improvement in Massaglia's condition after her reinjury, it would not have changed the physicians' opinions that she was not presumptively disabled.

Further, the ALJ adequately explained his step 3 determination. In considering whether a claimant's condition meets or equals a listed impairment, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Reading the opinion as a whole, there is no reason to overturn the ALJ on this point. *See Curvin v. Colvin*, 778 F.3d 645,

650 (7th Cir. 2015). The ALJ discussed Listing 1.04 for spinal disorders involving nerve compression and provided a sound basis for concluding that the record lacked evidence of nerve root compression for 12 months as required to meet Listing 1.04. *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). The ALJ thoroughly discussed the record and supported his conclusion with (at least) the following evidence: (1) imaging of Massaglia's spine in 2014 showed no evidence of nerve root compression; (2) her condition improved with physical therapy and pain management in 2014 and 2015; (3) after her 2016 reinjury and surgery, she reported a 90 percent improvement in her pain; and, (4) despite her reports that her pre-surgery symptoms had returned a few months after the surgery, a new MRI showed that the surgeon had successfully removed her herniated disc.

Finally, Massaglia challenges the ALJ's conclusion that her testimony about the "intensity, persistence, and limiting effects of these symptoms" was not entirely credible. This court will uphold an ALJ's credibility determination unless it is "patently wrong." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). The ALJ's analysis of Massaglia's subjective complaints was supported by the record and does not provide a basis for remand. An ALJ may consider the effectiveness of a claimant's treatment in making a credibility determination. *See* 20 C.F.R. § 404.1529(c)(3)(iv)–(v); *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018). Here, the ALJ pointed to medical evidence showing that the treatment Massaglia received was generally successful in managing her symptoms. An ALJ is also permitted to consider whether a claimant's daily activities are inconsistent with alleged inability to work. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). And the ALJ noted that, despite her back condition, Massaglia was able to engage in substantial activities between 2014 and 2016: she could rake leaves and mow the lawn regularly, went hiking, and even canoed on vacation with no issues. "[W]e will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

AFFIRMED