NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 25, 2022
Decided February 8, 2022

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 20-2912

| | |
|---|---|
| ROBERT McGILLEM, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of |
| | Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:19-cv-01852-MPB-TWP |
| KILOLO KIJAKAZI, Acting | |
| Commissioner of Social Security | Matthew P. Brookman, |
| *Defendant-Appellee*. | *Magistrate Judge*. |

**O R D E R**

Robert McGillem challenges the denial of his applications for Social Security disability insurance benefits and supplemental security income. He argues that the administrative law judge who determined that he was able to perform certain light work despite his fecal incontinence ignored contrary evidence and failed to connect his conclusion to the evidence that was presented. Although this is a close case, we conclude that substantial evidence supports the ALJ's decision, and so the applicable standard of review compels us to affirm.

# I

McGillem, now 57, applied for disability insurance and supplemental security income in May 2013, claiming that he had been disabled since May 26, 2011. He asserted that he was unable to work because of a combination of mental illness, breathing issues, migraines, and blurred vision; notably the list did not include bowel problems or incontinence. An ALJ issued an unfavorable decision in October 2015, and the Appeals Council denied McGillem's request for review in March 2017. In 2018, however, a district court remanded with instructions to take another look at McGillem's complaints of bowel issues, fibromyalgia, and migraines. *McGillem v. Berryhill*, No. 117CV01386MJDJMS, 2018 WL 656343, at *4 (S.D. Ind. Feb. 1, 2018). We pick up the story at that point.

*Medical Treatments*

In December 2011 McGillem was diagnosed with a small bowel obstruction. In June 2014, he was diagnosed with dyssynergic defecation, a colonic nerve condition that can inhibit awareness of oncoming bowel movements. This was treated with biofeedback therapy. Earlier that year, in February, a nurse practitioner at a gastroenterology clinic concluded that he likely had irritable bowel syndrome. At this time, McGillem experienced 3 to 4 bowel movements per day. In January 2015, McGillem returned to the clinic, seeking treatment for fecal incontinence. The same nurse practitioner noted that McGillem had no fiber in his diet and that he reported that the biofeedback therapy helped, but loperamide (an anti-diarrheal medication) did not. When McGillem returned to the clinic in May 2015, he reported that his symptoms had improved but not resolved, and that he now had just one bowel movement per day, after his evening meal. He also said that the biofeedback therapy continued to help.

Two years later, in June 2017, McGillem again visited the clinic about his incontinence. A gastroenterologist noted improvement in McGillem's symptoms and recorded daily use of fiber supplements and loperamide. The doctor suggested that McGillem cut his consumption of carbonated soda, use loperamide before meals, and increase his daily fiber supplementation. At the last relevant visit, which was in January 2018, a doctor noted that McGillem's symptoms were "stable at this time, though he is not on loperamide so feel [*sic*] there is room for improvement."

*Administrative Proceedings*

A state-agency medical consultant reviewed McGillem's medical records back in November 2013 and determined that he did not have any severe impairments. A second consulting physician affirmed this conclusion on reconsideration in February 2014.

At a hearing before an ALJ on November 6, 2018, McGillem testified that his incontinence was ongoing, that he had dealt with it since childhood, and that when he was employed, he had handled the issue by changing clothes several times per day. He also testified that dietary changes and biofeedback treatment had not helped.

The ALJ called a medical expert, who testified that McGillem's impairments included irritable bowel syndrome and fecal incontinence, that his impairments did not meet or equal a medical listing, that his bowel issues responded to treatment, and that he was limited to light physical exertional work. In response to a hypothetical question from McGillem's counsel, the medical expert indicated that incontinence might give rise to the need to change clothes or use a sanitary pad while on the job, but that it would not otherwise support any work-related restrictions. A vocational expert testified that an employer would need to assess whether an employee experiencing incontinence would require more breaks than other employees. He explained that a lenient employer might allow more frequent breaks for incidents of incontinence, but in a competitive work setting, unpredictable breaks would preclude employment.

After the hearing, the ALJ issued a decision finding that McGillem was not disabled. Applying the standard five-step analysis, see 20 C.F.R. § 416.920(a)(4), the ALJ found that McGillem had not engaged in substantial gainful activity since the alleged onset date (step one), and that he suffered from several mental and physical impairments, not including any bowel-related conditions (step two). But none of these impairments met or equaled a listed impairment (step three). And although McGillem could not return to any of his previous work (step four), the ALJ concluded that he could perform light work with some restrictions (related to standing, walking, and exposure to background noises). The ALJ determined, based on the vocational expert's testimony, that with this residual functional capacity McGillem could work as a sorter, routing clerk, or collator operator (step five). On that basis, he denied McGillem's application.

The ALJ discussed McGillem's incontinence and irritable bowel syndrome but determined that they were not severe. He found that the incontinence was controlled when McGillem followed the prescribed treatment of loperamide, fiber

supplementation, and reduced consumption of carbonated soda. Because the condition was treatable, the ALJ concluded, the incontinence was "a slight abnormality that would have no more than a minimal effect on his ability to work." The district court upheld the denial of benefits.

## II

On appeal, McGillem argues only that, because the ALJ failed adequately to incorporate McGillem's incontinence into his residual functional capacity, the denial of benefits cannot stand. We review the ALJ's decision directly and treat his findings are "conclusive" if they are supported by "substantial evidence." See 42 U.S.C. § 405(g). That is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).

The ALJ's most significant error, McGillem argues, was the failure to discuss McGillem's corroborating evidence, including his diagnosis of dyssynergic defecation and his incontinence-related skin issues. Both of these, he contends, are objective evidence that supports his subjective allegations. McGillem contends that his dyssynergic defecation diagnosis in particular proves that incontinence will occur "on some regular basis," and will therefore preclude employment if one accepts that any incident would result in firing. McGillem characterizes the ALJ's findings as "an effective conclusion [he] … would never experience … even a single instance of fecal incontinence," and he contends that this finding cannot stand for two reasons. First, the ALJ failed to consider evidence contrary to his conclusion, and second, the judge failed to build a "logical and accurate bridge" between all the evidence and his conclusion that McGillem could perform light work.

This line of argument does not fairly reflect the ALJ's opinion. The ALJ granted that there is objective evidence of McGillem's incontinence. Nonetheless, the judge concluded, the record showed that McGillem's condition could be controlled with treatment. This is a relevant consideration. See 20 C.F.R. § 404.1530; *Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005) (upholding ALJ's assessment that claimant's panic attacks imposed minimal work limitations when record showed they were well-controlled with medication). The potential causes or additional symptoms of McGillem's condition (a skin rash) are not relevant to the conclusion that his incontinence could be controlled. Furthermore, the ALJ expressly discussed McGillem's biofeedback therapy—the treatment for his dyssynergic defecation—in his analysis of incontinence. He did not, as McGillem contends, entirely overlook this point.

McGillem also fails to support his key assertion that the diagnosis of dyssynergic defecation will inevitably lead to incontinence on "some regular basis." The most that the record supports is a finding that McGillem *may* experience trouble knowing when a bowel movement is imminent. But McGillem does not point to any evidence that the condition makes incontinence inevitable, let alone that it will occur with any particular frequency (predictable or otherwise). And McGillem reported improvement in his symptoms, even with this diagnosis, from the biofeedback therapy and other prescribed treatment. In short, McGillem's assertion that the dyssynergic defecation diagnosis necessarily precludes employment is not supported by the record and is insufficient to undermine the ALJ's findings that his incontinence could be adequately controlled.

McGillem next contends that the ALJ made the mistake of relying on his own medical judgments and thus failed properly to connect his conclusion that the incontinence was treatable to the evidence. We understand McGillem to be arguing that the neurological aspect of his dyssynergic defecation precludes the possibility that his treatments would or could be effective. But those treatments were prescribed by doctors who were aware (or were made aware) of his diagnosis. That they addressed the effects (incontinence) and not the underlying neurological cause does not make them less effective with respect to the ability to work without having accidents—at least not as far as McGillem has shown.

Further undermining the suggestion that the ALJ impermissibly relied on his own medical judgment is the evidence in the record showing that McGillem's symptoms improved at various times. In his February 2014 visit to the gastroenterology clinic, McGillem reported 3 to 4 bowel movements per day, primarily after meals. At a visit to the same clinic in June 2017, the treating physician noted that the frequency was down to one per day, that "incontinence is better than in the past," and that McGillem was using the fiber supplement and loperamide daily. By citing these records, the ALJ appropriately relied on the medical opinions of treating physicians—opinions that are owed considerable weight. See 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 251–52 (7th Cir. 2016).

McGillem further argues that the ALJ erred in discrediting McGillem's testimony that his symptoms could not be controlled. He believes that the ALJ relied on an "incomplete and inaccurate assessment of [McGillem's] medication compliance." Rather than showing noncompliance, McGillem argues, the record shows he "was communicating what was working and what was not with his treating physicians who adjusted medications accordingly."

But we see no reason to disturb the ALJ's evaluation of McGillem's credibility with respect to his symptoms or treatment. McGillem testified that treatments proved ineffective. Yet several treating providers opined that the prescribed treatment improved McGillem's incontinence. So did McGillem himself in treatment visits. In resolving these inconsistencies, the ALJ gave less weight to McGillem's statements regarding the effectiveness of treatment and the severity of his symptoms than he gave to the medical accounts. This was not "patently wrong" and is not a reason to reverse the ALJ's determination. See *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

There was also a testifying medical expert on whom ALJ permissibly relied in assessing McGillem's work limitations. 20 C.F.R. § 404.1527(f)(2); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). This expert reviewed the whole record and listened to the testimony before opining that McGillem could perform light work. The expert noted several times that the medical record showed improvement when McGillem complied with treatment. The ALJ explained that he gave the medical expert's opinion substantial weight for those reasons and because the expert's assessment of the incontinence was not contradicted by any treating sources. McGillem does not state what (if any) further restrictions would be appropriate, or what evidence there is to support specific further limitations. He refers generally to time off-task and the need for frequent unpredictable breaks, but he does not quantify these limitations or show why they are work-preclusive. Medical evidence supports the existence of the condition, but the need for restrictions cannot be inferred from the diagnosis alone.

We cannot say that this record lacks the "relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion that McGillem's bowel condition was not work-preclusive. We thus AFFIRM the judgment of the district court.